I have the next argued case this morning, number 221112, however you pronounce it, SEMICONDUCTOR TECHNOLOGIES LLC against NVIDIA Corporation. Mr. Rainey. Good morning, your honors, and may it please the court, Richard Rainey on behalf of the appellant IDEA. The inventors here identified a localized planarization problem that arises when a particular configuration of structures is subjected to Damascene CMP, where oxide erosion occurs on one side of the structure and dishing occurs on the other side of the structure. They solved this problem by coming up with an elegant approach of dropping dummies into the empty dielectric that's sat between those two structures. How dispositive is the claim construction issue here? In other words, depending which way we go, how much of the case does that take care of in your view? In our view, the board made it clear it was not relying on our construction, but accepted the broader construction. And I think you have to read its opinion as its findings are consistent with that throughout. So the entirety of the decision, in our view, rests on this claim construction issue. Every one of the combinations involved the references, and nowhere did the board make a finding, for example, that there was intervening dielectric that had no other structures in it, other than the dummies. If we were to agree with you on the claim construction, what would we then do with the case? You would have to remand the case, at the very least, for the board to reconsider the prior references under that construction. And candidly, Your Honors, I don't think there's much argument that the legal standard the board applied here on claim construction was wrong. The board bypassed completely looking at the intrinsic record to see what this claim meant. The claim on its face is not unambiguously broad by any stretch. We would argue that interpreted fairly, it means exactly what these inventors came up with, which is a configuration of three things. If I remember right, and you'll correct me if I don't, at a number of places in the board's analysis, did it point to other aspects of the claim as sort of separately requiring what you want to be part of the claim construction, or not? Well, the board relied on the words between and comprising to essentially disaggregate these three elements. And that's how the board arrived at its conclusion that there could be intervening structures and still satisfy the claim limitation. So if that's the question you're asking, that's how the board arrived at that approach, which is to read the word between totally out of context of the intrinsic record. And your view is that the proper construction is one in which there is nothing but dielectric between the large single pool and the kind of multi-lane lap pool? Our construction is it is a wide line next to a series of dielectric and dummy conductors next to a series of narrow lines. That's what the claim solution is. That's what the claim is directed to. Right, but before you put the dummies in, what cannot, what can there not be between the large pool and the, I just think of it as a lap lane pool and a big pool. It's an empty dielectric, and the specification makes that clear. There can't be anything else in there, it just has to be a dielectric. Certainly absent conductive material. I mean, anything else is, I mean. Didn't the board, among other things, say, well, there's a little bit of a switch there between absent conductive material and nothing but dielectric. And that begins to tell you that maybe we're doing a lot of reconstruction of something that's pretty plain on its face as not excluding what you want to exclude. Because you can't even be absolutely definite about what's being excluded. Well, I would argue, first of all, the word between, I mean, if you just looked at it in the abstract, one of the most accepted definitions is the space separating two things. So, the claim talks about dielectric between the two, the wide and the series of narrow lines. So, I don't think it's abundantly clear that other things can be in there. And the discussion about other structures really arose from the petition, where the petitioners took the position that because it's a comprising claim, it can include other trenches. And our response was, no, it cannot include other trenches. The claim is very specific about what is included, and the specification makes it abundantly clear what is included. It's the three elements, and that's it. That's the whole solution here. You have the comprising language in the claim. And that generally is a pretty forceful factor, at least in my sense. And what you're saying is here, there's material in the claim and the specification that overcomes the force of the comprising language, correct? I would argue that's not the principal argument here. The principal argument here is comprising can't be used to abrogate a claim element. Here it's a claim that includes A, B, and C. We're talking about what the construction of element A is in this claim. The comprising language, open-ended language, this is a semiconductor topography. It can be read on a structure that has other things outside of these elements in it. So, it's not at all unusual here that you would have the word comprising. But it still has to have the required elements. Element A of that three-element claim being this three-component structure we're talking about. So, I don't think comprising helps the board here at all. But even if it did, we think the specification here, at least implicitly, demonstrates a disavowal of anything else. If one does still, contrary to your view, look to the comprising language, your rejoinder would be, you look to the specification, and any force arising from the comprising language is overcome. Absolutely. I don't think, frankly, it's extremely clear. Every single aspect of the specification is directed to exactly what we are saying this invention is. And the specification uses, frankly, from the very first sentence of the specification to the end, language that consistently shows that that's what this invention is directed to. The second subject I wanted to address is the issue of motivation to combine. The board here also, we think, clearly, legally erred in finding a motivation to combine elements of the prior art simply because those elements happened to be mentioned in the prior art reference. This court has made it clear in case after case, and the Supreme Court made it clear in KSR, that even if a prior reference has elements A, B, C, D, E, and F, that's in the prior art. There's no issue with that. You still have to show a motivation to combine, say, element F with your primary reference. Here, the major flaw in the board's analysis is they flatly rejected that law. They said that is not the law. Respectfully, this court has said it time and again, including just a few days ago in the Netflix opinion, in the Andrea case that we cite as well, repeatedly. That absolutely is the law. Why is that important here? Where in the board's opinion did you say that the board rejected this legal proposition? It's in appendix page 42, Judge Toronto. Quote, patent owner also suggests that the motivation to combine asserted by petitioner limits how the references can be combined. Then I'm purposely putting an ellipse in there. In fact, the opposite is true. This is the board now. Once one of ordinary skill is motivated to look to a reference, that reference is prior art for all it teaches. We made the correct statement of law to the board, and the board responded by telling us the opposite is true. We think there can be no clearer erroneous statement of law than that. It's particularly relevant here when you consider the facts. We challenged the obviousness challenges here, focused heavily on figure 8 of the Stein 1998 article. We challenged what the motivation would have been for a person of ordinary skill in the art to look at figure 8, which is a, frankly, a grainy image of a chip layout from seven years prior to the article. All the article does, it says we ran our technique, which was the purported motivation, was the technique that was described in Stein. All Stein says is we ran our technique on this old figure, and we solved various planarization problems with the figure. What is the basis for looking at figure 8? The board's answer was, well, it's part of Stein 1998, so therefore, that's all that was needed to be shown. We submit that that is plainly an error that warrants, at the very least, a remand. We frankly think that Stein should be out because there is no motivation to look at figure 8 of Stein. When you take figure 8 of Stein out, Stein falls out. Stein is a prior reference in every one of the combinations asserted in this case. On those two grounds, we would submit that... Can I ask just one question? Yes. Is it important to our review of the board's decision what all the details are of figure 8 in Stein 1998? Or is that ultimately immaterial one way or the other to the outcome? So, the board... We spent a lot of time trying to blow the picture up and talk about which things are really where. A little bit hard to follow, even after lots and lots and lots of pages, and I'm trying to understand how important that is to the proper analysis here. Well, in a proper motivation to combine analysis, figure 8 should be out. And so, under that approach, the details of figure 8 don't matter because it shouldn't have been considered in the first place. Under the claim construction analysis, we submit there's no basis to conclude figure 8 shows an empty dielectric. A dielectric absent other trenches, to use their phrase from the petition. And so, therefore, you could reverse all those findings based on a proper claim construction. So, I do think the details matter in the claim construction analysis. They don't matter in the motivation to combine analysis. If the court has no further questions, I'd like to reserve the remainder of my time for rebuttal. Okay. Thank you, Mr. Reddy. Mr. Penikowski. Good morning, Your Honors. May it please the court. Stanley Penikowski for Apelli NVIDIA Corporation. The board's final written decisions should be affirmed. The board correctly construed the claims, it properly analyzed motivation to combine, and substantial evidence supports all its challenge findings. Turning first to claim construction, Your Honors, there are two paths to the same correct result that the board reached here. The first and shortest path is this court's decision in Omega Engineering. In Omega Engineering, this court held that negative limitations must find support either in the words of the claim or through an express disclaimer or independent lexicography in the written description that would justify adding that negative limitation. Here, the claim construction that Invensys proposes is, on its face, a negative limitation. Because, as this court said in Ethicon, cited in our response brief, a negative limitation is one that excludes elements from the scope of the claim. Here, the claim language says, taking it from Claim 16 of the 946 patent at Appendix 128, a substantially planar semiconductor topography comprising, which this court held in CIAS v. Alliance Gaming means including but not limited to, and then we get the contested language, a plurality of laterally spaced dummy trenches in a dielectric layer between a first trench and a series of second trenches. That claim language is unambiguous, Your Honors. So long as you have what the claim specifies, you can have other elements, including other trenches, other structures between the first trench and the series of second trenches. And the word comprising cements that, including but not limited to. What Invensys proposes here is to add the negative limitation, not allowing intervening trenches or other structures between the structures of the claims. That's not in the claim language, so that prong of Omega Engineering is out. There's no express disclaimer in the specification. Invensys does not even argue for one. It simply argues that you can infer that from the specification. And as I plan to turn to, you cannot even infer that from the disclosures of the specification they rely on. But Omega Engineering requires express disclaimer. Nor is there any independent lexicography. Invensys does not claim that there's any kind of definition. Are we still on the first path? Yes, Your Honor, Omega Engineering. What about the second path? Your Honor, if this court were not to apply Omega Engineering directly, one of the most instructive cases here is Straight Path IP from 2015, cited by Invensys in its reply brief. Where this court said in Straight Path IP, applying Phillips, when you have a situation where the claim language is clear, and there's no uncertainty, there's no range of ordinary meanings in context, the role of the specification becomes more limited. And you are looking for... Can you talk about the specification one way? At least I understand Mr. Rainey's point, is that if you look at the specification, it's really quite clear what that is describing from beginning to end. And I think you quickly adverted to how you were going to explain why that's not so. Correct, Your Honor. The specification does not clearly support their construction at all. In fact, it provides no support for their construction. There's no instance in the specification where it says that there can be no intervening trenches between the series of relatively narrow trenches and the wide trench. Every instance where that's described in the specification, the applicants are talking about the structures of the claims, but not saying anything that would exclude intervening trenches. You also have the fact that even if you could interpret those specification passages the way InvenCIS would like, the specification consistently says that these are just embodiments. It says that column 3, line 50, column 4, line 40... Is there anything in the spec that is affirmatively helpful to you in the sense that when you read some passage, you can actually see that it includes something intervening, and yet is still talking about putting in dummy trenches? Is there anything like that, or is it all just absence? Your Honor, it is not entirely absence. There is a specification passage that is affirmatively helpful. Perhaps not quite to the extent that you suggested in the latter part of your question, but that part starts at column 2, line 23, at appendix page 124. This is in the background of the invention, and the applicants are saying that you can have a co-planner upper surface under certain conditions, where you might then not have this problem that's recognized in the prior art. It goes on to say that if you meet these conditions, which would be having trenches that are relatively narrow, closely spaced, and consistently spaced, then you can avoid planarization problems. But, as you go on to line 26 to 32, it says, if those rather restrictive requirements are not met, then you're going to have problems with planarization. And that supports the board's construction because it's saying this is not a situation where you only have planarity problems with the conventional semiconductor topography that's identified in figure 2, and described at column 6, lines 4 to 17. Rather, you can have planarity problems any time you don't have these rather restrictive requirements of the dielectric wire being jam-packed with trenches, narrow, closely spaced, consistently spaced. And that affirmatively suggests, Your Honor, that even going beyond the absence of the type of limiting disclosure that Inventus proposes, the specification affirmatively indicates that you can have a situation where you have the narrow trenches on one side, the wide trench on the other side, and then you have a dielectric layer with some intervening trenches or other structures. Or maybe you have a dielectric layer, you have an intervening trench or other structure, and another dielectric layer. If you have that kind of situation, you're still going to have planarity problems. Because simply having one intervening trench is not going to do much to help you solve planarity if you're not meeting the rather restrictive requirements that the specification talks about. It is therefore Inventus's construction that would defeat the purpose of the invention here. Because it would exclude situations where you have one or a few intervening trenches, and therefore you still have planarity problems that the background of the invention is discussing here. But, Your Honor, not only does Inventus's clean construction fail under both Omega Engineering and Straight Path IP and the broader Phillips analysis, even if the clean construction were adopted, it would not change the result here. Did the board find that? No, Your Honor, the board did not explicitly find that. The board did make two findings that indicate that it would find obviousness even under Inventus's construction. That was at footnote 14, appendix page 40, when it was disagreeing with Inventus's contention that Stein 1998 did not teach what they called the relevant solution, which again is their very limited, narrow, negative limitation construction that the claim and specification do not support. And also the board, in analyzing the Promatic 1998 reference for the 946 patent, said that figure 5 of Promatic 1998, which is at appendix page 751, is essentially identical to figure 4 of the 946 patent. And again, figures 2 to 4 describe what the patent itself says is a conventional semiconductor topography. So there's nothing novel there. There's nothing novel about the use of dummy conductors, JSO, and numerous other references in this case disclosed. So all we have would be, at best, conventional solution applied to what the patent itself says is a conventional semiconductor topography, even under their construction. So those are the board findings that indicate that it would find obviousness even under Inventus's construction. But even if... Is the point you made about Promatic applicable to both of the Promanics? Isn't there a 97 and a 98? Yes, Your Honor, it is ultimately applicable to both with one difference. Promatic 1997 does not have the figure that shows side by side the narrow lines and the wide lines with the open oxide area in between. It describes in its text at appendix page 735 the presence of narrow interconnects and a wide interconnect in connection with problems of dishing and erosion. So for Promatic 1997, for the 231 patent, you would need to apply the background knowledge of a person of skill in the art, just as Dr. Bonin did here, Invidia's expert, as well as numerous other references he relied on to say that if you have narrow interconnects... This is all the sort of thing we would not be much inclined to be doing ourselves for the first time, right? You're likely not with respect to Promatic 1997 if the Court got that far with Promatic 1998 on the 946 patent. Both Figure 5 and the Board's findings considering Figure 5 would supply all the ingredients that are needed if the Court even got that far. What we also have here are... And this is moving beyond, Your Honor, the question of whether this Court would be inclined to affirm or to remand if it adopted Invenstis' construction. You also have the fact that at Appendix pages 266 to 273, Dr. Bonin demonstrated in four different ways obviousness even under Invenstis' construction. It took JSO and it combined it with just the textual teachings of Stein 1998, where at Appendix page 710, Stein 1998 says that most ASIC designs today have these dense circuit regions and you are only going to have planarity problems with respect to the larger open areas. And then it then says that in many ASICs you have large open areas or sparse regions near or around writing channels that are prime candidates for metal fill. And what Dr. Bonin did is he took that teaching, combined it with JSO... The Board, as I recall, quoted that prime candidate sentence from Stein 1998. Yes, Your Honor. I wasn't quite clear how much the Board was relying on that sentence, although I think it did say you all pointed to it. How much did the Board rely on that? Your Honor, the Board did rely on that statement in combining JSO and Stein 1998 to not only find, as it did at Appendix 27 to 29, that the combined teachings of JSO and Stein 1998 teach all the elements of the claim. It also, at Appendix page 43, said that run of steel in the art would have been motivated to combine JSO and Stein 1998 to render obvious the relative width limitation. And in the context of that discussion... I know your time is running out. Can you just address Mr. Rainey's point about the paragraph on page 42 that he indicated he suggested was the Board repudiating a legal standard having to do with motivation. Right. Your Honor, that paragraph at Appendix page 42 is simply responding to one argument that Invencis made. The Board wasn't suggesting there that figure 8 was somehow divorced from NVIDIA's motivation to combine showing an analysis. In fact, at Appendix page 28 when the Board is reciting NVIDIA's arguments it's reciting arguments showing that we are arguing that Stein 1998 and JSO's teachings, all the teachings together here would motivate a person's skill in the art to make the claim combination. Now at Appendix page 42, the Board is in the process now of knocking down the various arguments Invencis has made, and Invencis is trying to drive a wedge between figure 8 and the rest of Stein 1998. The Board never endorses that Once NVIDIA pointed to the analytical method of Stein 1998, which by the way includes the case study layout to which the methodology was applied. But once NVIDIA pointed to that NVIDIA wasn't then frozen and limited to that and unable to rely on anything else, even if you accept this notion that figure 8 is somehow outside that analysis. And the Board correctly quoted EWP for the proposition that a prior art reference is prior art for all that it teaches, not just its invention. So this conventional chip layout to which Stein 1998 applies its dummy fill methodology, which is the same thing that JSO is doing. They're both applying the addition of dummy fill to equalize pattern density to improve planarity and once we demonstrated the motivation to combine those teachings, even if you think of it in terms of an analytical framework, that didn't somehow exclude figure 8 from the analysis. And Your Honor, if I may conclude on this point, this Court's decision in General Electric cements the correctness of the Board's conclusion here, where in General Electric the Court said, you look at the motivation to combine at the level of a motivation to combine references and sure, under KSR, the ultimate inquiry is, is there a sufficient motivation to combine the elements in the way that the applicants put them together. But you're looking at references and you don't need to show an individual motivation to combine each element within a reference, particularly when that reference already combines those elements. To do that, this Court said, would unduly dissect references. That was very specifically about a patent reference and the language there was about how when it's a patent reference and I think it used the word invention that you would be un-combining what the inventors who were the authors of that patent reference had already combined. Can one say the same thing about Stein in 1998? Your Honor, General Electric's holding is not limited to... Its language can be read as limited in that way. Your Honor, even if one read General Electric to be limited in that way, its rationale would certainly extend to that situation here. This is not a situation with Stein 1998 where... But that's a reference specific point rather than a broad it's always true of every reference that everything in it is related to everything else. That's just not true. Your Honor, you can imagine a reference where one part of it teaches you how to change a tire and another part teaches you how to cook an omelet. In that type of situation, you might have more of an issue about what exactly is the motivation to combine that you're asserting and then what else is brought in along with that. Stein 1998 is at the opposite pole of that hypothetical. Your position is it's all kind of about one thing. It's Stein 1998. Yes, Your Honor. Stein 1998 makes that clear. That's enough. Your Honor, unless there are further questions, NVIDIA asks this Court to affirm the Board's final written decision. Thank you, Your Honor. Thank you. Thank you, Randy. Thank you, Your Honor. A few rebuttal points. First, the only affirmative evidence counsel pointed to in the specification that they say supports their construction is from Column 2 in the background of the invention talking about various problems in the art. We don't purport to solve all the problems of the art. Our specification goes on to explain the problem that we confronted right before the summary of the invention where we talk about the invention. And the invention is everywhere, everywhere described, precisely as we say it's properly claimed. Second, it's not a negative limitation to describe affirmatively what something is and respond to your adversary who says it also includes everything else. We simply respond, this is a claim that is talking about a wide line next to a dielectric with dummies in it next to a series of narrow lines. That's three things that are part of this configuration. Adding other elements to this changes it and makes it a totally different configuration that's a different invention solving other problems. We confronted a singular problem and we solved that and we think the claim language makes that point and it makes that point even clearer with the relative sizes that are mentioned in the claims. It makes no sense to assume there can be a lot of other things when you're talking about relative size of three items in a particular configuration. On the point about Stein saying prime candidates, Judge Tronoblue, you asked a question about that, the very next sentence, the very next sentence of Stein which gets overlooked in here says, especially for regions near routing channels, which is exactly what we're talking about here, blindly adding metal fill without considering the impact on capacitance is disastrous, resulting in increased delay or coupling. It directly refutes this notion that all we're doing is applying conventional techniques to solve this problem. This was a unique localized problem with a unique localized solution that was solved by these patents. As to the statement that the board made, it's not a defensible statement in light of this court's clear case law about what is required to demonstrate obviousness. The case that says a prior reference is good for all that it teaches is a non-answer to the question of what is required to show a motivation to combine various elements from references, which is the point we made to the board and the point the board responded to by saying the opposite is true. We submit under this court's case law that's just plain legal error that is prejudicial in this case. These reasons we would ask the court to at a minimum vacate and remand. Thank you very much. Thank you. Thanks to both counsel. The case is taken under submission.